2001 UT App 205

STATE of Utah, Plaintiff and Appellee,

v.

Michael Shawn CASEY, Defendant and Appellant.

No. 20000122–CA.

Court of Appeals of Utah.

June 28, 2001.

Michael R. Sikora, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney General, and Jeffrey S. Gray, Assistant Attorney General, Salt Lake City, for Appellee.

Before GREENWOOD, P.J. and BILLINGS, and DAVIS, JJ.

OPINION

BILLINGS, Judge:

¶ 1 Defendant Michael Shawn Casey appeals his convictions of attempted murder, a second degree felony, in violation of Utah

Code Ann. §§ 76–5–203(1)(a) and 76–4–101 (1999), and aggravated assault, a third degree felony, in violation of Utah Code Ann. § 76–5–103 (1999).[1] Defendant argues he was improperly convicted of attempted murder because the jury was not instructed that attempted murder requires the "intent" to cause a death. He also argues he was improperly convicted of aggravated assault and attempted murder because the offenses were based on the same conduct. We affirm.

## BACKGROUND

¶ 2 " 'We view the facts in the light most favorable to the jury verdict and recite them accordingly.' " *State v. Lopez*, 2001 UT App 123, ¶ 2, 419 Utah Adv. Rep. 3, 24 P.3d 993 (citation omitted). In early 1999, Defendant was romantically involved with Tresa Franz (Franz). After drinking alcohol with Terron Allred (Allred) and Franz, Defendant drove Allred, Franz, and Franz's son around. They eventually stopped to purchase a pint of rum. Defendant drank most of the pint and became intoxicated and belligerent towards Franz. Franz asked Defendant to take her home, but he instead threatened to kill her and drove to a friend's house. At the house, Allred left the car to speak with the friend. Defendant and Franz began arguing, and Franz asked if he was ready to go home. Defendant responded, "Fuck you, bitch. I'm going to take you home all right," and pointed a handgun at Franz's neck.

¶ 3 Seeing Defendant point the gun at Franz, the friend told them to leave. Defendant put the gun down and agreed to leave. As Allred returned to the car, Franz fled into the house. However, she returned a few minutes later because she realized her son was not with her. After Franz returned, Defendant began arguing with her and

threatened her again. Hearing the argument, the friend's uncle emerged from the house and told them to leave. Defendant apologized, backed out of the driveway, and drove away.

¶ 4 Before they reached the end of the block, Defendant pointed the gun at Franz's face and pulled the trigger, but the gun misfired. Defendant then shot at Franz's feet, but missed, the bullet lodging in the floorboard. Defendant then pushed the gun barrel to Franz's head, but before he could pull the trigger, Franz pushed his arm in the air and jumped from the car. As she jumped, the gun discharged again. During the altercation, three shots were successfully fired.

¶ 5 Defendant was charged with attempted murder, aggravated assault, domestic violence in the presence of a child, and enhanced penalties on each count for using a dangerous weapon. The jury convicted Defendant on all counts. Prior to sentencing, Defendant's counsel withdrew. Subsequently, appointed counsel filed a motion for a new trial, arguing that the trial court improperly instructed the jury on the mens rea required for attempted murder and that the aggravated assault was a lesser included offense of the attempted murder. Following a hearing, the trial court denied Defendant's motion. Defendant filed this appeal.

## STANDARD OF REVIEW

[1] ¶ 6 This appeal presents issues of statutory interpretation. Statutory interpretation presents a question of law; "[t]herefore, we review the trial court's ruling[s] for correctness and give no deference to its conclusions." *State v. Vigil*, 842 P.2d 843, 844 (Utah 1992); *see also State v. Keppler*, 1999 UT App 89, ¶ 4, 976 P.2d 99.[2]

1. Defendant was also convicted of domestic violence in the presence of a child, a third degree felony, in violation of Utah Code Ann. § 76–5–109.1 (1999), and received enhanced penalties under Utah Code Ann. § 76–3–203 (1999), for use of a dangerous weapon. He does not appeal the conviction or the enhancements.

2. The State does not argue that we should not consider the mens rea or lesser included offense issues because they were not preserved for appeal. However, Defendant did not raise these

issues until his motion for a new trial. Ordinarily the failure to timely raise an issue waives that issue. *See* Utah R.Crim. P. 12(d). However, when a trial court considers the merits of an issue raised in a motion for a new trial, the issue is preserved for appeal. *See State v. Seale*, 853 P.2d 862, 870 (Utah 1993) (concluding objection to admission of videotape due to failure to comply with Utah Code Ann. § 76–5–411 was preserved for appeal because trial court addressed merits); *State v. Lucero*, 866 P.2d 1, 2 n. 3 (Utah

## ANALYSIS

### I. Was Defendant Properly Convicted of Attempting to "Intentionally or Knowingly" Cause Franz's Death?

¶ 7 Defendant argues that Utah's Criminal Code requires the State to prove that he had the "intent" to cause Franz's death. Therefore, he argues the jury was improperly instructed that the required mental state was "intentionally or knowingly" and his conviction must be reversed.

¶ 8 The attempt statute provides:

(1) [A] person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for the commission of the offense, he [or she] engages in conduct constituting a substantial step toward commission of the offense.

(2) [C]onduct does not constitute a substantial step unless it is strongly corroborative of the actor's intent to commit the offense.

Utah Code Ann. § 76–4–101 (1999). Defendant was charged with attempted murder under section 76–5–203(1)(a) of the murder statute (the "intentional or knowing" alternative). This section provides: "Criminal homicide constitutes murder if [a defendant] . . . intentionally or knowingly causes the death of another." Utah Code Ann. § 76–5–203(1)(a) (1999).

¶ 9 Both parties rely on *State v. Maestas*, 652 P.2d 903 (Utah 1982) and *State v. Vigil*, 842 P.2d 843 (Utah 1992). Construing the attempt and murder statutes in *Maestas*, the Utah Supreme Court rejected a claim that an attempt to commit first degree murder [3] re-

quires a mental state greater than "knowing." *See Maestas*, 652 P.2d at 904–05. The court offered two rationales for its decision. First, the court interpreted paragraph one of the attempt statute to require "only the kind of culpability otherwise required for the commission of the [completed] offense." *Id.* at 904 (alteration in original) (quotations omitted). Accordingly, the court concluded that "there [is] no difference between the intent required as an element of the crime of attempted first degree murder and that required for first degree murder." *Id.* Alternatively, the court explained, even if the common law governed, the "intentional or knowing" mental state required for first degree murder was sufficient under the common law. *See id.* at 905.

¶ 10 Significantly, the jury instructions in *Maestas* were similar to the jury instructions in the present case. They "described the elements of attempted first degree murder and defined the terms 'intentionally' and 'knowingly' in precisely the language used by the Utah Criminal Code." *Id.* at 907 (citing Utah Code Ann. § 76–2–103(1)–(2) (1953)). The *Maestas* court specifically noted that the jury "received proper instruction[s] concerning the act and intent requirements for the crime charged." *Id.*

¶ 11 Subsequently, in *Vigil*, the Utah Supreme Court held that attempted murder under the depraved indifference murder alternative in section 76–5–203(1)(c) [4] is not a crime. *See Vigil*, 842 P.2d at 843–44. The court first noted the mental state required to support a depraved indifference murder conviction is "knowledge" that conduct "created a grave risk of death to another." *Id.* at 844. The court then rejected the *Maestas* court's

---

Ct.App.1993) (concluding objection to supplemental jury instruction was preserved for appeal because trial court considered and ruled on merits). Although Defendant did not raise either issue until his motion for a new trial, the trial court considered and ruled on the merits of these issues. Therefore, we conclude the issues were preserved for appeal.

3. In 1991 the Legislature changed "first degree murder" to "aggravated murder" and "second degree murder" to "murder." Act of 1991, ch. 10, §§ 8–9, 1991 Utah Laws 74, 78–79 (codified as amended Utah Code Ann. §§ 76–5–202 to – 203 (1999)). The "intentional or knowing" men-

tal states required for aggravated murder in section 76–5–202(1) and murder in section 76–5–203(1)(a) are identical. *See State v. Johnson*, 821 P.2d 1150, 1160 n. 6 (Utah 1991). Aggravated murder requires aggravating circumstances to accompany the mental state. *See id.* at 1156.

4. "Criminal homicide constitutes murder if [the defendant] . . . acting under circumstances evidencing a depraved indifference to human life engages in conduct which creates a grave risk of death to another and thereby causes the death of another." Utah Code Ann. § 76–5–203(1)(c) (1999).

interpretation of paragraph one of the attempt statute. Paragraph one provides that an attempt occurs when a defendant "acts with the 'kind of culpability otherwise required'" for the underlying offense. *Id.* at 845 (quoting Utah Code Ann. § 76–4–101(1)). The court construed that language "to refer to the attendant circumstances, if any, of the underlying offense." *Id.* at 845–46 (footnote omitted).

¶ 12 The court then construed paragraph two of the attempt statute. Paragraph two provides that "the defendant's conduct must be corroborative of his or her 'intent to commit the offense.'" *Id.* at 845 (quoting Utah Code Ann. § 76–4–101(2)). The court concluded paragraph two limits attempts to offenses with the mental state of "intent," as defined by section 76–2–103(1). *See id.* at 847. Section 76–2–103(1) defines "intent" as "'conscious objective or desire.'" *Id.* (emphasis and citation omitted). Accordingly, the court held:

> [T]o convict a defendant of attempted second degree murder, the prosecution must prove that the defendant had a conscious objective or desire to cause the death of another. Because the mental state required for depraved indifference homicide falls short of that intent, the crime of attempted depraved indifference homicide does not exist in Utah.

*Id.* at 848 (emphasis added).

¶ 13 Although in *Vigil* the court overruled *Maestas* in part, the court explicitly refused to completely overrule *Maestas* and approved the second rationale articulated in *Maestas.*

> The first alternative rationale relied on in *Maestas* is clearly inconsistent with ... [*State v. Bell,* 785 P.2d 390 (Utah 1989), *State v. Howell,* 649 P.2d 91 (Utah 1982), and *State v. Norman,* 580 P.2d 237 (Utah 1978) ] and with our holding in the instant case. Thus, that portion of *Maestas* ... is

incorrect. However, *we note that Maestas is still good law insofar as it authorizes prosecution for* attempted aggravated murder under the intentional or knowing formulation of section 76–5–202(1) or *attempted murder under the intentional or knowing formulation of section 76–5–203(1)(a).*

*Id.* at 848 n. 5. (emphasis added). Thus, *Vigil* explicitly allows a conviction for a "knowing" mental state under § 76–5–203(1)(a), which is the section under which Defendant was convicted.

¶ 14 Defendant argues that following *Vigil,* attempted murder requires the "intent" to cause a death, therefore, the "knowing" state of mind in the "intentional or knowing" alternative is insufficient. We disagree. The court noted, "The issue before us is narrow[,] ... to determine whether ... the 'knowing' mental state required for depraved indifference homicide under section 76–5–203(1)(c) ... is sufficient to satisfy the mental state required by Utah's attempt statute." *Id.* at 844. If the court intended to eliminate attempted "knowing" murders under the "intentional or knowing" alternative, instead of writing that "*Maestas* is still good law insofar as it authorizes prosecution for ... attempted murder under the intentional *or knowing* formulation of section 76–5–203(1)(a)," *id.* at 848 n. 5 (emphasis added), the court could have simply written that *Maestas* is still good law insofar as it authorizes attempted "intentional" murders under section 76–5–203(1)(a).[5]

## II. Was Defendant Properly Convicted of Aggravated Assault and Attempted Murder?

¶ 15 Defendant argues that the aggravated assault and attempted murder should not have been charged as two separate offenses because they were one offense in the same

---

5. Following *Vigil,* Utah appellate courts have stated without analysis that the mental state required for an attempted murder conviction under the "intentional or knowing" alternative is "intent" to cause a death or "knowledge that one's acts would result in death if carried out" *State v. Gardner,* 947 P.2d 630, 642 (Utah 1997) (plurality opinion), or knowledge that "conduct [is] reasonably certain to cause [a] death." *State v. White,* 880 P.2d 18, 23 (Utah Ct.App.1994); *see also State v. Lemons,* 844 P.2d 378, 381 n. 3 (Utah Ct.App.1992) (noting required mental state is "intent" or "knowledge"); *cf. State v. Johnson,* 821 P.2d 1150, 1156 (Utah 1991) (noting prior to *Vigil* mental state required is "intent" or "knowledge"); *State v. Castonguay,* 663 P.2d 1323, 1325 (Utah 1983) (same).

criminal episode and because the aggravated assault was a lesser included offense of the attempted murder. Under section 76–1–402(1):

> A defendant may be prosecuted in a single criminal action for all separate offenses arising out of a single criminal episode; however, when the same act of a defendant under a single criminal episode shall establish offenses which may be punished in different ways under different provisions of this code, the act shall be punishable under only one such provision. . . .

Utah Code Ann. § 76–1–402(1) (1999).

¶ 16 The clear intent of this section is that "[a] defendant may not be punished twice for [the same] act." *State v. O'Brien*, 721 P.2d 896, 900 (Utah 1986). Thus, we must determine if the conduct supporting the aggravated assault and attempted murder were the "same act." *See State v. Mane*, 783 P.2d 61, 63 (Utah Ct.App.1989).

¶ 17 Utah appellate courts have concluded acts are independent if they are in no way necessary to each other or sufficiently separated by time and place. *See State v. Young*, 780 P.2d 1233, 1239 (Utah 1989) (concluding forcible sexual abuse and forcible sodomy supported two counts of aggravated sexual assault because they were in no way necessary to each other); *O'Brien*, 721 P.2d at 897, 900 (concluding defendants who broke into cabin, then later pointed guns at owners, threatened to shoot them, held them at gun point for several hours, took money from them, and then kidnaped them, were properly sentenced for aggravated burglary, aggravated robbery, and aggravated kidnaping because the crimes were the result of separate and distinct acts); *State v. Porter*, 705 P.2d 1174, 1178 (Utah 1985) (concluding defendant committed two separately punishable burglaries when he broke into an apartment within twenty minutes of breaking into a laundry room in the same "apartment house").

¶ 18 We conclude the aggravated assault and attempted murder were not necessary to each other and were separated by time, place, and intervening circumstances. The aggravated assault occurred in the driveway. Defendant stated, "Fuck you, bitch. I'm going to take you home all right," then pointed a gun at Franz's neck. Seeing Defendant point the gun at Franz, the friend told him to leave and he put the gun down. Franz then fled the car into the house. Clearly, the assault was complete at this point.

¶ 19 Following the assault, Franz remained in the house for a few minutes. Franz then returned to the car, and Defendant began arguing with her again. The friend's uncle emerged from the house and told them to leave. Defendant then backed the car out of the driveway. As Defendant drove down the street, he committed the separate act of attempting to murder Franz by pointing a gun at her head and pulling the trigger. He then shot at her feet and pushed the gun barrel to her head.

¶ 20 Clearly, the aggravated assault and attempted murder were in no way necessary to each other and were separated by time, place, and intervening circumstances. Thus, we conclude section 76–1–402(1) does not bar Defendant's conviction of both offenses.

¶ 21 Defendant next argues that the statutory elements, jury instructions, and evidence establish that the aggravated assault was a lesser included offense of the attempted murder. He therefore argues he was improperly convicted of both offenses under section 76–1–402(3):

> A defendant may be convicted of an offense included in the offense charged but may not be convicted of both the offense charged and the included offense. An offense is so included when:
>
> (a) It is *established by proof of the same or less than all the facts* required to establish the commission of the offense charged.

Utah Code Ann. § 76–1–402(3) (1999) (emphasis added).

¶ 22 The State concedes, and we assume without deciding, that Defendant's conduct while driving involved an aggravated assault which merged into an attempted murder. However, the issue in this case is not whether Defendant was improperly convicted of a lesser included offense based on his conduct while driving. Rather, the issue is whether

the assault on Franz in the driveway followed by the attempted murder while driving down the street were separately proved at trial.

¶ 23 In *State v. Betha*, 957 P.2d 611 (Utah Ct.App.1998), this court considered whether aggravated assault was a lesser included offense of aggravated burglary. *See id.* at 617. The evidence demonstrated three separate assaults had occurred, two in the victim's house and one in the defendant's car. *See id.* at 619. We noted, "While it is true that [the] defendant twice assaulted [the victim] during the aggravated burglary, he assaulted her a third time after he left the scene of the burglary and was in the act of committing aggravated kidnaping." *Id.* Therefore, we concluded, "[T]he elements of aggravated assault were established by proof of *more* than 'all the facts required to establish' the aggravated burglary." *Id.* (quoting Utah Code Ann. § 76–1–402(3)(a) (1995)). We then considered "whether the jury was properly instructed to find this additional proof." *Id.* We concluded that because the jury was instructed that it had to find an additional element to convict the defendant of aggravated assault, that the defendant intentionally caused serious bodily injury, under the facts of the case, aggravated assault was not a lesser included offense of aggravated burglary. *See id.*

¶ 24 Unlike *Betha*, the aggravated assault in the present case has the same elements as the attempted murder, but was based on different facts. However, *Betha* counsels that a jury must be instructed appropriately so it does not convict a defendant twice on the same facts. *See id.* To uphold Defendant's conviction, we must find that a reasonable jury would have understood that based on the instructions, arguments, and evidence at trial, it could not convict Defendant of

aggravated assault and attempted murder based only on the acts in the driveway or only on the acts committed while driving down the street. *Cf. State v. Ross*, 951 P.2d 236, 245 (Utah Ct.App.1997).

¶ 25 Defendant argues the jury was not instructed that it could not convict Defendant of aggravated assaulted and attempted murder based on the conduct while driving. However, the jury was instructed that "[a] separate crime or offense is charged in each count of the information. *Each charge and the evidence pertaining to it should be considered separately*." (Emphasis added.)

¶ 26 Arguably this instruction sufficiently instructed the jury that it could not convict Defendant of aggravated assault and attempted murder based on the same evidence.[6] Moreover, there is no evidence in the record that Defendant objected to the jury instructions at trial or in his motion for a new trial. "[R]ule 19(c) of the Utah Rules of Criminal Procedure provides that in order to preserve an issue involving a jury instruction, the objecting party must make an objection in the trial court, '*stating distinctly* the matter to which he objects and *the ground of his objection.*'" *State v. Rudolph*, 970 P.2d 1221, 1227 (Utah 1998) (quoting Utah R.Crim. P. 19(c)). "Accordingly, absent a showing of manifest injustice, ... [we will] refuse to review jury instructions to which [a] party did not object in the trial court...." *Id.* Manifest injustice requires that the error be "obvious" and "be of sufficient magnitude that it affects the substantial rights of a party." *Id.* at 1226 (quotations and citation omitted). Defendant does not argue on appeal that the instructions meet either of these requirements. Therefore, his lesser included offense argument fails.

---

6. The State's arguments make it clear that the aggravated assault and attempted murder were based on separate conduct. In her opening argument the prosecutor stated:
   [Defendant has] been charged with three crimes. He's been charged with aggravated assault. And that's for pointing a gun at [Franz's] head while they were parked behind [the friend's] house. He's been charged with attempted homicide. And that's for pointing a gun at [Franz], pulling the trigger and trying to kill her.

   In closing, the prosecutor stated:
   Going in chronological order ... first of all, [Defendant has been] charged with aggravated assault.... And I submit to you that when [Defendant] was at [the friend's] house, he pointed a gun at [Franz] ... threatening her with a dangerous weapon. That is an aggravated assault. The attempted homicide, Count 1. And [Defendant] took that gun and he pointed it at [Franz's] head in the car and he pulled the trigger. [Defendant] attempted to kill ... [Franz].

## CONCLUSION

¶ 27 We conclude that the required mental state for attempted murder under section 76–5–203(1)(a) is "intent or knowledge," and therefore, the jury was appropriately instructed in the present case. We also conclude that Defendant's aggravated assault and attempted murder convictions were based on independent acts and were separately proven at trial. Therefore, we affirm Defendant's convictions.

¶ 28 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge, and JAMES Z. DAVIS, Judge.