The STATE of Utah, Plaintiff
and Respondent,

v.

Dallas Eugene O'BRIEN and Harold D. Bales, Defendants and Appellants.

No. 17753.

Supreme Court of Utah.

June 30, 1986.

Milton T. Harmon, Nephi, for O'Brien.

Ronald J. Yengich, G. Fred Metos, Salt Lake City, for Bales.

David L. Wilkinson, Atty. Gen., Sandra L. Sjogren, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

HALL, Chief Justice:

Defendants appeal their convictions, after a joint trial on April 6, 1981, before a jury, of aggravated burglary, U.C.A., 1953, § 76–6–203 (Repl.Vol. 8B, 1978 ed.); aggravated kidnapping, U.C.A., 1953, § 76–5–302 (Repl.Vol. 8B, 1978 ed.) (amended 1983); aggravated robbery, U.C.A., 1953, § 76–6–302 (Repl.Vol. 8B, 1978 ed.); and theft of firearms, U.C.A., 1953, § 76–6–404 (Repl. Vol. 8B, 1978 ed.).

On November 26, 1980, defendants broke into a mountain cabin owned by Keith and Vaneese Barrett. Later that evening, the Barretts arrived at their cabin to find defendants waiting inside. Both defendants pointed guns at the Barretts and threatened to shoot them. During the next several hours, defendants held the Barretts at gunpoint, while demanding food, drink, and money. A total of five shots were fired inside the cabin; $800 was removed from Mr. Barrett's wallet; and Mr. Barrett's .308 caliber rifle was confiscated. At around midnight, defendants forced the Barretts to accompany them in the Barrett vehicle from Sevier County to Salt Lake County. In Salt Lake, the Barretts were able to escape from defendants.

At trial, there was evidence that defendants may have consumed large quantities of alcohol during the day in question. The Barretts and police officers also testified that defendants had been drinking on the night of the crimes. Defendant Bales testified that he and O'Brien were both alcoholics. Evidence was also adduced that defendants scuffled and argued, both in the cabin and in the vehicle, and that defendant Bales struck defendant O'Brien several times.

Defendants' first point on appeal is that the trial court erred by refusing to sever the co-defendants' trials. Defendants contend that their defenses were antagonistic

to one another and that the failure to sever the trials was prejudicial to each defendant.

Prior to trial, defendants' attorney timely moved to sever co-defendants' trials, alleging that defendants' defenses were inconsistent. O'Brien's defense was that his actions were the direct result of coercion, threats, and bodily intimidation by Bales. O'Brien did not take the stand, and this defense was put forward only by his counsel. Bales' defense was that of diminished mental capacity as a result of his alcoholism. Bales did take the stand in his own defense.

Rule 9 of the Utah Rules of Criminal Procedure, U.C.A., 1953, § 77–35–9 (Repl. Vol. 8C, 1982 ed.), governs, among other things, the joinder and severance of co-defendants for trial purposes. The Rule states in pertinent part:

> (b) Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or conduct or in the same criminal episode.

> Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

> When two or more defendants are jointly charged with any offense, they shall be tried jointly unless the court in its discretion, on motion or otherwise, orders separate trials consistent with the interests of justice.

> . . . .

> (d) If it appears that a defendant or the prosecution is prejudiced by a joinder of offenses or defendants in an indictment or information, or by a joinder for trial together, the court shall order an election of separate trials of separate counts, or grant a severance of defendants, or provide such other relief as justice requires.

■■■■ A defendant thus is not entitled to severance as a matter of right since the grant or denial of severance rests within the sound discretion of the trial judge. A denial of severance will be reversed by this Court only if a defendant's right to a fair trial has been impaired.[1]

■ As was observed in *State v. Collins*,[2] "The trial court must, when defendants are charged jointly, weigh possible prejudice to any defendant with considerations of economy and practicalities of judicial administration. Doubts concerning prejudice should be resolved by the trial court in favor of a defendant...."[3] Notwithstanding that admonition, trial courts often appear to be reluctant to grant severance in cases involving joint defendants. Such reluctance is ill-advised and in the long run risks greater expenditure of judicial resources. Thus, whenever joint defendants have defenses that appear to be inconsistent with or to obstruct or impede each other, the trial court should carefully examine requests for severance and should grant severance when there is any doubt as to prejudice.

The charges against defendants in this case resulted from their participation in the same acts. The entire quantum of evidence and testimony offered by the State was relevant to both defendants, including evidence regarding the sequence of events, each defendant's participation, and the events themselves.

■■■■ Antagonistic defenses alone are not sufficient to require a separate trial. The test of whether antagonistic defenses by two defendants require severance is whether the conflict in the co-defendants'

---

1. *State v. Collins*, 612 P.2d 775, 777 (Utah 1980); *State v. Pierre*, 572 P.2d 1338, 1350 (Utah 1977), *cert. denied*, 439 U.S. 882, 99 S.Ct. 220, 58 L.Ed.2d 194 (1978); *State v. Rivenburgh*, 11 Utah 2d 95, 108–09, 355 P.2d 689, 698 (1960), *cert. denied*, 368 U.S. 922, 82 S.Ct. 246, 7 L.Ed.2d 137 (1961).

2. 612 P.2d at 775.

3. 612 P.2d at 777.

respective positions at trial was of such a nature that, considering all the evidence in the case, the defendants were denied a fair trial.[4] In the case before us, however, defendants have failed to make any showing of harm or prejudice caused by the denial of severance.

In any event, defendants' separate defenses were not truly antagonistic. Both defendants admitted that the acts charged took place. It was only in their defenses that any differences appeared. From the evidence adduced at trial, these defenses were not inconsistent. Bales' defense that he had diminished capacity as a result of alcoholism was in no way antagonistic to O'Brien. Bales did not attempt to cast blame on O'Brien in any fashion. On the other hand, O'Brien's defense that Bales exerted coercive force on O'Brien was not antagonistic to Bales' defense since Bales admitted he participated in the acts charged.

■ Furthermore, hostility between co-defendants or the fact that one defendant attempts to cast blame on his co-defendant is not alone sufficient reason to require severance of the co-defendants' trials. The defendants must prove their defenses were irreconcilable.[5] In this case, defendants' defenses were not irreconcilable, and neither defendant has made a showing of harm or prejudice caused by the denial of severance.

■ Defendants' second point on appeal is that the trial court erred in refusing to sever the charges and hold a separate trial on each charge. Defendants were originally charged with eight counts. Prior to trial, defendants timely moved to sever counts four, five, six, seven, and eight from each other and from counts one, two, and three. Defendants did not request sever-

ance of counts one, two, and three. The trial court severed counts four, five, six, and eight and ordered trial to go forward on counts one, two, three, and seven. The severed charges related to alleged burglaries and thefts that took place at other cabins in the vicinity of the Barretts' cabin. Counts one (aggravated burglary), two (aggravated kidnapping), three (aggravated robbery), and seven (theft of firearms) all related to the events that took place at the Barretts' cabin.

U.C.A., 1953, § 76–1–402(1) (Repl.Vol. 8B, 1978 ed.) provides in pertinent part: "A defendant may be prosecuted in a single criminal action for all separate offenses arising out of a single criminal episode...." A single criminal episode is defined by U.C.A., 1953, § 76–1–401 (Repl. Vol. 8B, 1978 ed.) as "all conduct which is closely related in time and is incident to an attempt or an accomplishment of a single criminal objective."

In this case, each count tried arose out of a single criminal episode—the events at the Barretts' cabin. The firearms in question were relevant to each of the other charges. Further, defendants demonstrated no prejudice to them by joinder of the theft of firearms charge with the remaining charges.

■ On appeal, defendants also appear to argue that the charge of aggravated kidnapping should have been severed from the other charges. Defendants did not raise this to the trial court and so have waived the issue on appeal.

Defendants' third point on appeal is that the trial court erred in sentencing defendants on each charge. Defendants contend that since the convictions stemmed from one criminal episode, defendants should have been given only one sentence, relying

---

**4.** *E.g., State v. Nelson,* 298 N.C. 573, 587, 260 S.E.2d 629, 640 (1979), *cert. denied,* 446 U.S. 929, 100 S.Ct. 1867, 64 L.Ed.2d 282 (1980). *See generally* Annot., 82 A.L.R.3d 245 (1978 & Supp. 1985).

**5.** *E.g., United States v. Puckett,* 692 F.2d 663, 671 (10th Cir.1982), *cert. denied,* 459 U.S. 1091, 103 S.Ct. 579, 74 L.Ed.2d 939 (1982), & 460 U.S. 1024, 103 S.Ct. 1276, 75 L.Ed.2d 497 (1983).

on U.C.A., 1953, § 76–1–402(1) (Repl.Vol. 8B, 1978 ed.). That subsection states in pertinent part: "[H]owever, when the same act of a defendant under a single criminal episode shall establish offenses which may be punished in different ways under different provisions of this code, the act shall be punishable under only one such provision. . . . "

■ The intent of this provision is clear. A defendant may not be punished twice for a single act.[6] Although defendants' crimes were committed during a single criminal episode, the crimes were a result of separate and distinct acts that resulted in separate and distinct crimes. Thus, under U.C.A., 1953, § 76–3–401(3) (Repl.Vol. 8B, 1978 ed.), which states, "A court may impose consecutive sentences for offenses arising out of a single criminal episode as defined in section 76–1–401," the trial judge was well within his discretion in sentencing defendants for four separate crimes.

■ We do note, however, that defendants' sentences were enhanced by both the one-year mandatory term and a five-year indeterminate term for each offense, to run consecutively.[7] The total maximum enhancement sentence that a court may impose for use of firearms in first and second degree felonies is five years on each conviction.[8] Therefore, the trial court erred in imposing two consecutive enhancement sentences for each conviction. The district court is therefore directed to reduce defendants' enhancement sentences accordingly on remand.

Defendants' next point on appeal is that the trial court erred by refusing to order a thirty-day psychological evaluation at the Utah State Hospital for the purpose of investigating both defendants' defenses of diminished mental capacity due to intoxication and alcoholism. Defendants' counsel timely moved for appointment of alienists. The trial court appointed three alienists pursuant to U.C.A., 1953, § 77–14–4(1) (Repl.Vol. 8C, 1982 ed.) (amended 1983 & 1986). That subsection states in pertinent part: "When the court receives a notice that a defendant intends to raise the defense of mental illness . . . it shall appoint two alienists to examine the defendant and investigate his mental condition." Defendants, however, contend that the provisions of U.C.A., 1953, § 77–15–5 (Repl.Vol. 8C, 1982 ed.) should have been followed. That section states in pertinent part:

(1) Where a petition is filed pursuant to section 77–15–3, the court shall enter an order for a hearing on the mental condition of the person who is the subject of the petition.

(2) Prior to the hearing the court may:

(a) Order the person to be committed to the Utah state hospital, or to another facility for an evaluation not to exceed a period of 30 days based on examination, observation or treatment; or

(b) Appoint two or more alienists to examine the person and to be present at the hearing to give testimony concerning the mental condition of such person.

■ While defendants do not raise on appeal defendants' competency to proceed, which is covered by this section, it was raised in defendants' motion for appointment of alienists. Nevertheless, defendants' argument has no merit. Under section 77–15–5, the trial court has the discretion to either order a defendant to the state hospital for a period not to exceed thirty days *or* to appoint alienists to examine the defendant, submit a report, and be available to testify. There is no evidence that the trial court abused that discretion by

---

6. *State v. Porter,* 705 P.2d 1174, 1178 (Utah 1985).

7. U.C.A., 1953, § 76–3–203(1), (2) (Repl.Vol. 8B, 1978 ed.) (amended 1983).

8. *State v. Willett,* 694 P.2d 601, 603 (Utah 1984).

appointing alienists. Thus, even though the trial court appointed the alienists under section 77–14–4(1), its actions were also entirely proper under section 77–15–5(2)(b).

Defendants advance two additional points on appeal, namely, that the court erroneously limited the time for trial preparation and also erred in admitting prejudicial and inadmissible evidence. We have examined those contentions and conclude that they are entirely without merit. Defendants' convictions are affirmed, and the case is remanded for resentencing in accordance with this opinion.

STEWART, HOWE, DURHAM and ZIMMERMAN, JJ., concur.